**AMERICAN POSTAL WORKERS UNION COLUMBUS AREA LOCAL AFL–CIO, Plaintiff-Appellant,**

v.

**UNITED STATES POSTAL SERVICE, Defendant-Appellee.**

No. 83–3427.

United States Court of Appeals, Sixth Circuit.

April 13, 1984.

Decided June 18, 1984.

Leonard S. Sigall, argued, Reynoldsburg, Ohio, for plaintiff-appellant.

Albert Ritcher, U.S. Atty., Columbus, Ohio, D. Richard Froelke, argued, Stephen E. Alpern, Washington, D.C., for defendant-appellee.

Before MARTIN and KRUPANSKY, Circuit Judges, and REED, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

The Columbus local of the American Postal Workers Union challenges the district court's dismissal of its complaint on *res judicata* grounds.

The union filed its complaint in January 1980 to enjoin the Postal Service from disciplining postal workers for failing to maintain an adequate work schedule when their absence was caused by use of approved sick leave. The Postal Service filed a motion to dismiss for failure to state a claim.

On April 22, 1980, the district judge granted the motion with respect to some but not all of the union's claims.

After this complaint was filed, another postal workers local, this one in Dallas, filed suit in the Northern District of Texas to enjoin a similar practice there. In that case, however, the district court granted the Postal Service's motion to dismiss. That decision was handed down on December 3, 1981. The district judge's order was upheld by the Fifth Circuit on October 20, 1982.

On January 10, 1983, the Postal Service moved for summary judgment in this case, claiming that the Fifth Circuit's decision on the failure to state a claim issue was *res judicata* as to this case. On May 16, 1983, the district judge agreed and issued a judgment against the union. Now the union appeals.

■■ We agree with the union that *res judicata* does not lie in this case for two reasons. First there is insufficient evidence that the Columbus local was in privity with the Dallas local. The trial judge seemed to believe that because there was an identity of interests between the two locals, the Columbus local's lawsuit could be barred by the Dallas decision. However, identity of interests, without more, will not suffice to bar a suit by a nonparty. *See McKinney v. Alabama*, 424 U.S. 669, 675–76, 96 S.Ct. 1189, 1193–94, 47 L.Ed.2d 387 (1976); *Griffin v. Burns*, 570 F.2d 1065, 1070–72 (1st Cir.1978).

The trial judge also found that privity was present because "the locals were operating under the auspices and pursuant to the directions of the national union." It has long been held that a decision against a union can be binding on union members in a subsequent action. *See e.g., Acree v. Airline Pilots Ass'n*, 390 F.2d 199, 202 (5th Cir.), *cert. denied*, 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122 (1968); *International Union, UAW v. Acme Precision Products, Inc.*, 515 F.Supp. 537, 540 (D.C.Mich.1981); *Sumaron v. Int'l Longshoreman's Union,*

---

* Honorable Scott Reed, United States District Judge for the Eastern District of Kentucky, sitting by designation.

450 F.Supp. 1026, 1029 (C.D.Cal.1978). Nevertheless, the national union was not a party to this lawsuit. In order for *res judicata* to apply to a nonparty, there must be a showing that the nonparty's involvement in the first action was at least as great as would be reasonably expected from a co-party. C. Wright, A. Miller and E. Cooper, *Federal Practice and Procedure* § 4451 at 430; *Jones v. Craig*, 212 F.2d 187 (6th Cir.1954). There was no such evidence in this record.

Moreover, even assuming that there was sufficient identity between the parties, *res judicata* would still not lie because the decision on the motion to dismiss in the Columbus case came *before* the decision on the same issue in the Dallas case. If anything, the Columbus decision should have been given preclusive effect in the Dallas case. Admittedly, there had been no final judgment in the Columbus case, but such a judgment is not required so long as there has been a final decision with respect to the issue to be given preclusive effect (in this case, the motion to dismiss). *See* Wright & Miller, *supra*, at § 4434 at 325–27 (1981); Restatement, *supra*, at § 13, comments e and g; *Lehigh Portland Cement Co. v. Swope*, 455 F.2d 638 (5th Cir.1972) (order denying motion to quash grand jury subpoena given preclusive effect in subsequent action to enjoin use of evidence). Once the preclusive effect of the Columbus decision was not recognized in the Dallas case, it would be appropriate to give preclusive effect to the Dallas decision in all subsequent cases, *see* Wright & Miller, *supra*, at § 4404, at 26, but not to make it binding in the first case. Therefore, we find it was error for the trial judge to grant *res judicata* effect to the Dallas decision.

Nevertheless, we affirm the decision of the district court against the local, but on other grounds. In his original ruling in this case, the trial judge found that the union had stated a cognizable claim on two separate theories: (1) that the Postal Service had violated 39 U.S.C. § 1005(f) by making unilateral changes in the sick leave program and (2) that the Postal Service's sick leave policy violated the due process

clause of the fifth amendment. Section 1005(f) of Title 39 states that no change in existing benefits (i.e., benefits in place at the time the Postal Reorganization Act of 1970 took effect) can be made "except by agreement between the collective bargaining representative and the Postal Service." The union claims that the Postal Service's new policy with respect to sick leave is a unilateral change and hence unlawful. We disagree. The record reveals that the union and the Postal Service have entered into a collective-bargaining agreement which essentially calls for continuation of the sick leave regulations in effect before the Postal Reorganization Act was passed. These regulations entitle an employee to sick leave accruing at the rate of one-half day per each bi-weekly pay period. However, these regulations say nothing about possible disciplinary actions for use of excessive amounts of sick leave. Moreover, the collective-bargaining agreement also contains a provision allowing the disciplining and/or discharge of employees for "just cause." The collective-bargaining agreement also calls for binding arbitration to resolve disputes over the meaning of that agreement. Such arbitration has been entered into regarding the Postal Service's current sick leave policy, and the arbitrator has ruled that such a policy is permissible. From this, we conclude that the union has consented to whatever changes have occurred in the sick leave program and, accordingly, has no claim under 39 U.S.C. § 1005(f).

As for the due process claim, we find first that the grievance/arbitration procedures established in the collective-bargaining agreement for disputes over the meaning and application of that agreement satisfy the procedural requirements of the due process clause. *See Winston v. United States Postal Service*, 585 F.2d 198 (7th Cir.1978). As for substantive due process rights against arbitrary and capricious action, we find, as a matter of law, that it cannot be arbitrary and capricious for the Postal Service to base employee disciplinary decisions, in part, on excessive use of available sick leave. In making this determination, we are acknowledging that an

employer has a legitimate interest in ensuring that its workers maintain a reasonably regular work schedule. Furthermore, "the right to terminate employees for excessive absences, even when they are due to illness, is generally recognized by arbitrators." Elkouri, *How Arbitration Works*, 545–46 (3d ed. 1973). Given that Congress intended labor relations in the new Postal Service to be governed by the labor law of the private sector, *see Malone v. United States*, 526 F.2d 1099, 1103 (6th Cir.1975), we find that a Postal Service disciplinary policy which takes into consideration an employee's use of approved sick leave bears a rationale relationship to a legitimate government purpose.

Of course, we recognize that improper application of this sick leave policy could result in arbitrary and capricious action in individual cases. Nevertheless, the gravamen of the union's complaint is that the sick leave policy itself, and not individual applications of that policy, is arbitrary and capricious.**

Accordingly, the decision of the district court is affirmed.

---

** We note that the union may have waived any right it may have had to challenge the constitutionality of Postal Service actions in court when it agreed in the collective-bargaining agreement to arbitrate any disputes over interpretation and implementation of that contract.