IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 93-7613

---

CYCLES, LTD.,

Plaintiff-Appellant,

versus

NAVISTAR FINANCIAL CORPORATION,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Southern District of Mississippi

---

(October 27, 1994)

Before JOHNSON, HIGGINBOTHAM, and DAVIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Cycles challenges the district court's decision to reverse its original ruling in Cycles' favor. We are persuaded that although the district court had the power to revise its original decision, it wrongly believed itself bound by the contrary findings of a later court. We vacate and remand.

Cycles leased certain truck trailers to W.J. Digby. In August 1980, their deal collapsed, Digby refused to return the trailers to Cycles, and a complicated chain of lawsuits followed. First, Cycles sued Digby for conversion (Digby I). The Southern District of Mississippi ruled for Cycles, finding that the lease agreement required Digby to return the trailers to Cycles.

Second, Cycles sued Navistar in the Southern District of Mississippi. In this second suit, the present action, Cycles claims that three years after Digby's conversion of Cycles' trailers, Navistar also converted Cycles' trailers. Navistar had financed Cycles' original purchase of the trailers and held Cycles' installment payment note and certificates of title for the trailers. In early 1983, Navistar transferred the certificates of title to Digby in exchange for full payment of the installment payment note.

At first, the district court agreed that Navistar converted the trailers by transferring the certificates to Digby. It held that delivering the certificates of title to Digby put the trailers further out of Cycles' reach, and Navistar at least should have known at the time that the trailers belonged to Cycles, not to Digby. As the district court then saw it, Navistar's action both aided Digby's conversion, and itself converted property. The court on June 30, 1989, filed a "Final Judgment" and awarded damages to Cycles. Navistar filed post-judgment motions to amend the findings of fact and conclusions of law under Rule 52(b) and to alter or amend the judgment under Rule 59(e).

Cycles, however, could not persuade the court to cement this judgment into a final, appealable order. Instead of resolving the post-judgment motions, the court waited four years for the resolution of a third suit: Digby II.

Digby II grew out of the demise of Digby I. In 1989, we vacated Digby I for lack of jurisdiction over Digby. See Cycles,

2

Ltd. v. W. J. Digby, Inc., 889 F.2d 612 (5th Cir. 1989).  Cycles then filed Digby II, an action against Digby in federal district court for the Eastern District of Arkansas.  The Arkansas federal court ruled for Digby.  It determined that Cycles had agreed to Digby's disposition of the trailers and that Digby had a qualified right of refusal to return them to Cycles.

The court below then revised its original opinion and entered judgment for Navistar, explaining that principles of res judicata and collateral estoppel compelled it to reverse its original judgment for Cycles and to render judgment for Navistar.  Cycles appeals this ruling.

The district court's concern with the Arkansas judgment is understandable.  The premise of its original opinion finding Navistar liable was that Digby's possession of the trailers was tortious.  From that premise, it originally concluded that Navistar's later delivery of the trailers' certificates of title to Digby was also tortious, since it aided Digby's wrongful possession of the trailers and made it harder for Cycles to get the trailers back.

In short, the Arkansas judgment denied the premise of the Mississippi court's conclusion.  The Arkansas court ruled that Digby did not convert Cycles' property.  If Digby did not, Navistar's transfer of the certificates to Digby could not.  The two acts of claimed conversion were separate, but logically dependent.

In reviewing its original opinion on Navistar's motions, the district court did not rest its decision on the persuasive force of the Arkansas court's reasoning. Rather, it revised its original opinion, persuaded that the Arkansas judgment compelled it to do so.

This was error. The Arkansas judgment had no preclusive effect upon decisions already reached after full litigation, like the original ruling. Judgments are final for purposes of issue preclusion when fully litigated, even if not yet appealable. See Chemetron Corp. v. Business Funds, Inc., 682 F.2d 1149, 1191 (5th Cir. 1982) (holding that a fully litigated, if non-final, decision enjoys issue-preclusive effect); vacated and remanded on other grounds, 460 U.S. 1007 (1983); reinstated on remand as to this ground, 718 F.2d 725, 728 (5th Cir. 1983); reh'g en banc ordered, id. at 730 (vacating opinion for rehearing en banc, which never occurred because parties settled); see also 18 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 4434, at 321 (1981) (surveying leading cases that consider non-appealable judgments to be final for purposes of issue preclusion); 1B James W. Moore et al., Moore's Federal Practice ¶ 0.416[3.-1] (2d ed. 1993) (endorsing rule that pendency of post-trial motions to change the judgment or set it aside does not suspend issue-preclusive effect of the judgment); Restatement (Second) of Judgments § 13 cmt. f (1982) (pendency of motions to set aside a judgment otherwise final for collateral estoppel purposes or to grant a new trial does not suspend issue-preclusive effect of the judgment).

4

Such fully litigated judgments, strong enough to preclude later inconsistent judgments, are a _fortiori_ strong enough to withstand preclusion by inconsistent later judgments.

Case law supports our conclusion that a court is not compelled to revise its fully litigated decision by later inconsistent decisions of other courts. In American Postal Workers Union v. United States Postal Serv., 736 F.2d 317, 319 (6th Cir. 1984) (APWU), the Sixth Circuit found no preclusion in a similar case. There, an action by a Columbus, Ohio local union survived the Postal Service's motion to dismiss. Later, another local union filed a similar suit in Dallas, Texas. A federal district court in Dallas granted the Postal Service's motion to dismiss, and we affirmed. Armed with our decision, the Postal Service moved for summary judgment in the Ohio court, arguing that the preclusive force of its Dallas victory compelled the Ohio district court to revise its original ruling on the motion to dismiss. The Ohio district court agreed and granted summary judgment for the Postal Service.

The Sixth Circuit disagreed. In dicta, the court stated that the preclusive force of the Dallas decision did not compel the Ohio court to revise its prior opinion. Id. The Dallas decision would preclude contrary determinations in all subsequent cases, but not issues already decided. Id. The fact that the Ohio ruling was not final for purposes of appeal made no difference. The Sixth Circuit acknowledged that even though the Ohio court's ruling was not yet appealable, it had preclusive force. Indeed, the Sixth Circuit

5

noted that the ruling "should have been given preclusive effect in the Dallas case."  Id.

In this respect, APWU differs from this case.  In APWU, the first decision should have precluded the second.  Because two plaintiffs were bringing separate actions against the same defendant, the first plaintiff's victory in Ohio could have enjoyed issue-preclusive effect in the second case in Dallas.  See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979) (permitting use of non-mutual offensive collateral estoppel).  Here, by contrast, the first decision could not have precluded the second.  One plaintiff, Cycles, had been pursuing two actions against two defendants: first Navistar, then Digby.  Cycles could not have used its victory against Navistar to win the case against Digby, since in the prior case Digby neither had a chance to contest its liability nor was in privity with a party that did.  See, e.g., Blonder-Tongue Lab., Inc. v. University. of Illinois Found., 402 U.S. 313, 329-30 (1971) (it is a violation of due process to preclude litigants who did not appear in prior action from relitigating issue of prior action).

Yet the mark of a decision's maturity for the purposes of issue preclusion is whether the decision was fully litigated.  If the first decision had the power to preclude relitigation of the same issues, for our purposes it does not matter if a later case ignores the opinion's preclusive power, as in APWU, or if no later case had the opportunity to consider its preclusive power, as here. In either event, the fully litigated opinion stands unaffected by a later inconsistent judgment.

We and the other circuits have similarly ruled that the preclusive reach of decisions does not extend to prior decisions. See, e.g., Freeman United Coal Mining. Co. v. Office of Workers' Compensation Program, 20 F.3d 289, 294 (7th Cir. 1994) (subsequent decision has no collateral estoppel effect on prior judgment because, inter alia, the opportunity to economize judicial resources is already lost by the time a second opinion is rendered); Howell v. Thomas, 566 F.2d 469, 469-70 (5th Cir.) (per curiam), cert. denied, 439 U.S. 826 (1978) (subsequent proceeding cannot collaterally estop prior proceeding); Flood v. Harrington, 532 F.2d 1248, 1250 (9th Cir. 1976) (subsequent case does not control outcome of prior case); see also 18 Wright & Miller, supra, § 4404, at 31 (where subsequent case conflicts with prior case on "a matter of issue preclusion, it is very unlikely that the first judgment should be set aside").

Navistar's proposed rule would unfairly force plaintiffs like Cycles, who must pursue defendants in separate jurisdictions, to play for all or nothing, recovering only with an uninterrupted stream of victories. If, like Cycles, they won one fully litigated judgment against one defendant but lost a second case to a second defendant, they would lose everything. The second adverse judgment would undo their prior, fully litigated victory. Our rejection of this backward reach lies with the longstanding rule that plaintiffs who lose against one defendant are collaterally estopped from prevailing on the same issue in future cases against other

7

defendants.  See Blonder-Tongue, 402 U.S. at 328-29 (permitting use of non-mutual defensive collateral estoppel).

We are persuaded that the district court's original decision was final for purposes of issue preclusion, and the district court erred in concluding that it was bound by the later decision of the Arkansas federal court to reverse its original ruling.  We vacate the decision below and remand to the district court for decision of Navistar's post-judgment motions to amend the original findings of fact and conclusions of law and to alter or amend the original judgment, free of any binding effect of the ruling by the Arkansas court.

VACATED and REMANDED.